# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-20228

United States Court of Appeals
Fifth Circuit

**FILED**
June 4, 2019

Lyle W. Cayce
Clerk

ALI EKHLASSI,

> Plaintiff - Appellant

v.

NATIONAL LLOYDS INSURANCE COMPANY,

> Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before BARKSDALE, SOUTHWICK, and HAYNES, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Ali Ekhlassi challenges the summary judgment awarded National Lloyds Insurance Company pursuant to the National Flood Insurance Act (the Act), 42 U.S.C. §§ 4001 et seq. Primarily, at issue are: whether 42 U.S.C. § 4072 (providing for "original exclusive jurisdiction" in district court and one-year limitations period) is applicable to actions against Write-Your-Own (WYO) carriers ("private insurers [which] issue flood insurance policies [underwritten by the Government] in their own names" as part of the National Flood Insurance Program (created by the Act), *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009)); and, if § 4072 is applicable, whether its one-year limitations period bars relief. AFFIRMED.

No. 18-20228

I.

This action concerns the Act's government program, 42 U.S.C. §§ 4071–72, which allows private insurance companies (as WYO carriers) to issue and administer flood-insurance policies underwritten by the Government. *See Campo*, 562 F.3d at 754. The required language of the policy issued by WYO carriers is provided in the Code of Federal Regulations in 44 C.F.R. pt. 61, App. A(1). *See Campo*, 562 F.3d at 754 n.11. Lloyds participated in the program as a WYO carrier.

The above-referenced Standard Flood Insurance Policy, provided in the Code of Federal Regulations and utilized by WYO carriers participating in the National Flood Insurance Program, states the "Requirements in Case of Loss". 44 C.F.R. Pt. 61, App. A(1), Art. VII (J). Among those requirements, the policyholder "must . . . send [the insurer] a proof of loss, which is [the insured's] statement of the amount [the insured is] claiming under the policy [and is] signed and sworn to by [the insured]". *Id.*

Ekhlassi insured his house in Houston, Texas, with a National Flood Insurance Program policy from Lloyds and a homeowner's policy from Auto Club Indemnity Company (ACIC). ACIC is not a party on appeal. An extensive rain-storm that caused flooding damaged Ekhlassi's home on 25 May 2015, and he reported the loss to Lloyds the next day.

On 28 May 2015, the Federal Emergency Management Agency (FEMA) issued a notice with a waiver for National Flood Insurance Program policyholders, extending the time within which to file a proof of loss by 180 days for "all claims for the flood damage related to the Texas and Oklahoma flooding" that began on 16 May 2015 and included Ekhlassi's house. As stated in the notice, policyholders had "a total of 240 days after the date of loss" to file the proof of loss. The notice stated it did "not . . . waive any other provisions of the [Standard Flood Insurance Policy]".

No. 18-20228

One such non-waived provision in the policy is the one-year statute of limitations.  44 C.F.R. Pt. 61, App. A(1), Art. VII (R).  That provision states: "If you do sue, you *must* start the suit within one year after the date of the written denial of all or part of the claim, and you *must* file the suit in the United States District Court of the district in which the covered property was located at the time of loss."  *Id.* (emphasis added).

Ekhlassi had an adjuster inspect his house.  After doing so, the adjuster obtained estimates from contractors for the cost of repair, which exceeded $200,000.  Lloyds also inspected the house, and concluded flooding from the 25 May storm did not cause much of the claimed damage.

As a result, Lloyds' subsequent 6 October 2015 letter to Ekhlassi stated it had reviewed his adjuster's report and would process a claim for $3,768.25 upon receipt of a "signed, dated and sworn to proof of loss".  The letter also stated it was "denying payment for any building and contents items not subject to direct physical loss by or from flood" and "denying payment for all non-covered items located below the lowest elevated floor of [Ekhlassi's house], pursuant to the Standard Flood Insurance Policy".

More to the point, the 6 October letter warned Ekhlassi about the above-quoted, one-year limitations period.  As noted, this period is provided in the Act, 42 U.S.C. § 4072; its regulations, 44 C.F.R. § 62.22(a); and the Standard Flood Insurance Policy, *id.* Pt. 61, App. A(1), Art. VII (R).  Notably, "strict compliance with the provisions of federal flood insurance policies is required because payments are drawn from the federal treasury".  *Shuford v. Fidelity Nat'l Prop. & Cas. Ins. Co.*, 508 F.3d 1337, 1343 (11th Cir. 2007) (citation omitted).

Ekhlassi submitted a proof of loss in late December 2015 for $274,940.05.  In response, Lloyds' 11 January 2016 letter to Ekhlassi acknowledged receipt of the proof of loss, and rejected all but $3,768.25 (the amount offered by the 6

No. 18-20228

October letter).  The 11 January letter also instructed Ekhlassi to "refer to the denial letter dated October 6, 2015[,] for what Federal law allows under the Standard Flood Insurance Policy and for reasons of denial for damages that have been claimed".

In mid-January, Ekhlassi signed, *inter alia*, a different proof of loss for $3,768.25, but he disagreed with the amount and stated his intent not to "conclude this claim in any manner whatsoever".

One year from the 11 January 2016 denial, Ekhlassi filed this action in Texas state court on 11 January 2017.  He claimed, *inter alia*, breach of contract against Lloyds.  This action was removed to federal court on 24 April 2017.

ACIC,  the issuer of the homeowner's policy, filed a summary-judgment motion, which was granted in November 2017.  (As noted, ACIC is not a party on appeal.)

Lloyds also filed a summary-judgment motion, which was granted in January 2018.  *Ekhlassi v. Nat'l Lloyds Ins. Co.*, 295 F. Supp. 3d 750 (S.D. Tex. 2018).   The court ruled Ekhlassi's action was time-barred, based on its concluding the 6 October, not the 11 January, letter triggered the one-year limitations period.  *Id.* at 755.

In early February 2018, pursuant to Federal Rule of Civil Procedure 59(e), Ekhlassi moved to reconsider the summary judgment awarded Lloyds. The March 2018 order denying the motion reiterated the court's prior holding: the 6 October letter served as the denial triggering the limitations period.

## II.

As governed by the Act, this action concerns a WYO carrier.  Our court has previously, and comprehensively, explained how the WYO program operates:

4

No. 18-20228

By enacting the National Flood Insurance Act of 1968, 42 U.S.C. § 4001 et seq., Congress established the [National Flood Insurance Program] to make flood insurance available on reasonable terms and to reduce fiscal pressure on federal flood relief efforts. FEMA administers the [p]rogram. Within [that] [p]rogram, the WYO program allows private insurers to issue flood insurance policies in their own names. Under this framework, the federal government underwrites the policies and private WYO carriers perform significant administrative functions including "arrang[ing] for the adjustment, settlement, payment and defense of all claims arising from the policies." WYO carriers must issue policies containing the exact terms and conditions of the [Standard Flood Insurance Policy] set forth in FEMA regulations. Additionally, FEMA regulations govern the methods by which WYO carriers adjust and pay claims. Although WYO carriers play a large role, the government ultimately pays a WYO carrier's claims. When claimants sue their WYO carriers for payment of a claim, carriers bear the defense costs, which are considered "part of the ... claim expense allowance"; FEMA reimburses these costs. Yet, if "litigation is grounded in actions by the [WYO] Company that are significantly outside the scope of this Arrangement, and/or involves issues of agent negligence," then such costs will not be reimbursable to the WYO carrier.

*Campo*, 562 F.3d at 754 (footnotes omitted).

WYO carriers are fiscal, not general, agents of the United States. *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 165 (3d Cir. 1998). As such, they administer the National Flood Insurance Program by "strictly enforc[ing] the provisions set out by FEMA and" can not "vary the terms of [the Standard Flood Insurance Policy]" without "express written consent" from the Government. *See C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co.*, 386 F.3d 263, 267 (3d Cir. 2004). At least historically, if not today as well, WYO carriers write far more policies than does FEMA. *See id.* Pursuant to federal regulation, WYO carriers are "sued in place of the FEMA [Administrator]" in actions involving WYO policies. *See id.* at 267 n.4.

5

No. 18-20228

The summary judgment awarded Lloyds is reviewed *de novo*. *E.g.*, *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 170 (5th Cir. 2009). "Summary judgment is appropriate when the record demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* at 170–71 (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 56(a).

In his original opening brief on appeal, Ekhlassi challenged: the district court's using Lloyds' first claim-denial letter (6 October 2015) to trigger the limitations period; and, its denying his Rule 59(e) motion. But, pending oral argument, we, *sua sponte*, ordered supplemental briefing by the parties regarding "the effect of the federal court's original exclusive jurisdiction on whether the action is barred by the limitations period".

Accordingly, primarily at issue are: whether 42 U.S.C. § 4072 applies to a WYO action like the one at hand; and, if it does, whether the statute's requirement of "original exclusive jurisdiction" in federal court causes this action to be time-barred because it was not filed in, or removed to, federal court within one-year of the claim's denial, regardless of which of the two letters (6 October 2015 or 11 January 2016) was the operative denial. For the reasons stated below, we hold: 42 U.S.C. § 4072 applies to actions against WYO carriers; and, because Ekhlassi's action did not arrive in federal court within one-year of his claim's denial, it is time-barred. (This holding pretermits our addressing whether the first or second letter served as the operative denial triggering the limitations period.)

No. 18-20228

A.

First addressed is whether, as urged by Ekhlassi, 28 U.S.C. § 1331 precludes the application of 42 U.S.C. § 4072 in actions involving a WYO carrier; and, if not precluded, whether § 4072 applies.

1.

In his supplemental brief, Ekhlassi contends 28 U.S.C. § 1331 applies to this action to the exclusion of 42 U.S.C. § 4072. Needless to say, § 1331 is the grant of federal-question jurisdiction to district courts. 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). And, our court has previously held "an action for breach of a[] [Standard Flood Insurance Policy], a policy issued pursuant to the [National Flood Insurance Program], satisfies § 1331 by raising a substantial question of federal law". *Borden*, 589 F.3d at 172 (citations omitted).

But, of course, the application of federal-question jurisdiction pursuant to § 1331 does not preclude application of the very federal statute giving rise to the federal interest at stake. In other words, merely because § 1331's jurisdictional grant applies does not mean § 4072's statute of limitations does not.

2.

Having determined § 1331 does not preclude application of § 4072, next considered is whether § 4072 applies to actions involving WYO carriers. Ekhlassi contends § 4072 applies only to the FEMA Administrator, not WYO carriers. That section provides:

> In the event the program is carried out as provided in section 4071 of this title, the Administrator shall be authorized to adjust and make payment of any claims for proved and approved losses covered by flood insurance, and upon the disallowance by the Administrator of any such claim, or upon the refusal of the

claimant to accept the amount allowed upon any such claim, *the claimant, within one year* after the date of mailing of notice of disallowance or partial disallowance by the Administrator, may institute an action against the Administrator on such claim in the *United States district court for the district in which the insured property* or the major part thereof *shall have been situated,* and *original exclusive jurisdiction is hereby conferred upon such court* to hear and determine such action without regard to the amount in controversy.

42 U.S.C. § 4072 (emphases added); *see also* 44 C.F.R. § 62.22(a).

Without their providing underlying analysis, at least two prior decisions by our court applied § 4072 to actions against WYO carriers. *Ferraro v. Liberty Mut. Fire Ins. Co.*, 796 F.3d 529, 531 (5th Cir. 2015) ("The district court had jurisdiction pursuant to 42 U.S.C. § 4072, which provides exclusive federal jurisdiction over litigation arising out of the [National Flood Insurance Program]."); *Constr. Funding, L.L.C. v. Fidelity Nat. Indem. Ins. Co.*, 636 F. App'x 207, 209 (5th Cir. 2016) ("The district court had jurisdiction over this dispute under 42 U.S.C. § 4072, which grants federal courts exclusive jurisdiction over disputes between claimants and insurers in the [National Flood Insurance Program]."); *see also Cohen v. Allstate Ins. Co.*, ___ F.3d ___, 2019 WL 2151314 (5th Cir. 2019) (applying statute of limitations provided in § 4072 to action involving WYO carrier).

Our court is not alone in applying § 4072 to WYO actions. The sixth circuit reached a similar conclusion in *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 947 (6th Cir. 2002) ("[Section] 4072 provides exclusive subject matter jurisdiction over suits against a WYO insurance company arising out of a disputed flood insurance claim". (citations omitted)); *id.* ("[T]his language mandates that federal district courts have exclusive jurisdiction over suits under [the National Flood Insurance Act]". (citation omitted)). The third circuit reached the same conclusion in *Van Holt*, 163 F.3d at 167 (holding § 4072 and § 1331 applied). The second circuit did as well in *Palmieri v.*

No. 18-20228

*Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006) ("holding . . . § 4072 gives rise to jurisdiction over claims against WYO companies", but not reaching the application of § 1331).

Again, Ekhlassi, in his supplemental brief, contends § 4072 applies only to FEMA's Administrator. Along that line, the seventh circuit declined to apply § 4072 to a WYO action. *Downey v. State Farm Fire & Cas. Co.*, 266 F.3d 675, 680 (7th Cir. 2001) ("Because we see no good reason to disregard not only the identity of the litigants but also the fact that § 4072 is limited to suits against the [Administrator], we decline to adopt *Van Holt*'s reasoning."). Rather, *Downey* applied jurisdiction under § 1331. *Id.* at 681–82. In doing so, *Downey* relied on § 4072's not mentioning a WYO carrier. *See id.* at 679.

As quoted above, § 4072 only describes an action against "the Administrator", which the statute later defines as "the [FEMA] Administrator". 42 U.S.C. §§ 4072, 4121(a)(6) (defining "Administrator"); *see also Palmieri*, 445 F.3d at 186; *Van Holt*, 163 F.3d at 166. But, § 4072's context is significant. *Palmieri*, 445 F.3d at 186; *Van Holt*, 163 F.3d at 166. "It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)). Accordingly, we "must . . . interpret the statute 'as a symmetrical and coherent regulatory scheme'". *Id.* (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995)).

That framework counsels in favor of applying § 4072 to WYO actions. In doing so, the third circuit's analysis in *Van Holt* is instructive:

> For several reasons, a suit against a WYO company is the functional equivalent of a suit against FEMA. First, a WYO company is a fiscal agent of the United States. 42 U.S.C. § 4071(a)(1). Second, FEMA regulations require a WYO company

9

No. 18-20228

to defend claims but assure that FEMA will reimburse the WYO company for defense costs. 44 C.F.R. § 62.23(i)(6). Third, an insured's flood insurance claims are ultimately paid by FEMA. After a WYO company depletes its net premium income, FEMA reimburses the company for the company's claims payments. 44 C.F.R. Pt. 62, App. A, Art. IV(A). When a WYO company's proceeds from insurance premiums exceeds its current expenditures, it must pay the excess proceeds to the [Flood Insurance Administration]. 44 C.F.R. Pt. 62, App. A., Art. VII(B). Although a WYO company collects premiums and disburses claims, only FEMA bears the risk under the flood insurance program. Thus, a lawsuit against a WYO company is, in reality, a suit against FEMA. *Cf. Gowland* [*v. Aetna*, 143 F.3d 951, 954–55 (5th Cir. 1998)], (refusing to estop WYO company due to relationship between company and FEMA).

*Van Holt*, 163 F.3d at 166–67; *see also Campo*, 562 F.3d at 754 (as quoted *supra*, describing how the WYO system in the National Flood Insurance Program operates). Similarly, as stated in *Palmieri*, 445 F.3d at 186, in a WYO action, the "suit is 'against' the [Administrator] in the colloquial sense, because it will draw down the federal financial resources he manages". Accordingly, "a broader reading of the statute is appropriate as to suits against WYO companies". *Id.*

Also instructive is 42 U.S.C. § 4053. *See Spence v. Omaha Indem. Ins.*, 996 F.2d 793, 795 n.12 (5th Cir. 1993) (stating "[§ 4053] indicates congressional intent to place a one year limitations period on actions under flood policies issued by private [National Flood Insurance Program] participants"). "When Congress created the [National Flood Insurance Program,] it gave the program's administrator two ways to execute the program and discretion to choose between them." *Downey*, 266 F.3d at 678. The first way is through the industry program, pursuant to 42 U.S.C. §§ 4051–56, which "allows a pool of private insurers to underwrite flood insurance with financial backing from the government". *Downey*, 266 F.3d at 678 (citation omitted). The alternative is the government program, pursuant to 42 U.S.C. §§ 4071–72, which "allows the

government to run the [National Flood Insurance Program] itself—offering federally underwritten policies—with the potential for administrative assistance from private insurers". *Downey*, 266 F.3d at 678 (citation omitted). But, the industry program ended in the 1970s, leaving only the government program. *Id.*

Nevertheless, § 4053 can inform our interpretation of § 4072. *Palmieri* explains:

> The general design of the [National Flood Insurance] Act also evidences an intent to ensure that claims involving the programs it creates are heard in the federal courts. Section 4053, which applied to the now-defunct Industry Program, vested exclusive jurisdiction in the federal courts over any action brought by an insured against a pool of private insurers. *See* 42 U.S.C. § 4053. Section 4072 similarly provides for exclusive jurisdiction in the federal courts over any action brought by an insured "against the [Administrator]." *Id.* § 4072. The statutory framework thus indicates not only that private insurers are to act as fiscal agents of the government in administering the federal program, but also that all claims for benefits under a[] [National Flood Insurance Act] policy, whether issued as part of the Industry Program or the Government Program and whether sought from a private insurer or the government, are to be litigated exclusively in federal court.

*Palmieri*, 445 F.3d at 186.

Finally, we note Ekhlassi's inconsistent positions regarding § 4072. His supplemental brief urges our holding § 4072 inapplicable to WYO carriers. But, despite his newfound efforts to distance his action from the restrictions of § 4072, he cited § 4072 numerous times in his original and reply briefs.

Even if prior decisions by our court had not applied § 4072 to actions against WYO carriers, we would be persuaded by the well-reasoned opinions from the second, third, and sixth circuits:  in short, § 4072 applies to WYO carriers.

11

No. 18-20228

B.

Having determined the applicability of § 4072, we turn to whether we can affirm the district court on this alternative basis; and, if we can, whether § 4072's application renders Ekhlassi's action time-barred. We answer both questions in the affirmative.

1.

Ekhlassi asserts Lloyds waived the statute-of-limitations defense premised on this action's not being filed in federal court. But, even if Lloyds did not raise this precise contention, we can still consider it.

In our court, "a well-settled discretionary exception to the waiver rule exists where a disputed issue concerns 'a pure question of law'". *New Orleans Depot Servs. Inc. v. Director, Office of Worker's Comp. Programs*, 718 F.3d 384, 388 (5th Cir. 2013) (en banc) (citations omitted); *Atl. Mut. Ins. Co. v. Truck Ins. Exch.*, 797 F.2d 1288, 1293 (5th Cir. 1986) ("An issue raised for the first time on appeal generally is not considered unless it involves a purely legal question or failure to consider it would result in a miscarriage of justice." (citations omitted)).

The issue at hand is a question of law; there are no disputed facts needing resolution. Moreover, this is an appeal from a summary judgment—a legal determination. Further, we ordered supplemental briefing on this issue and addressed it during oral argument. *See New Orleans Depot Servs. Inc.*, 718 F.3d at 388 (invoking the exception to the waiver rule because, *inter alia*, "every party was provided an adequate opportunity to brief and argue the issue before the . . . court").

2.

Ekhlassi's claim is time-barred. Lloyds' first letter was sent on 6 October 2015; its second, on 11 January 2016. Ekhlassi filed this action in state court on 11 January 2017, exactly one year from the second letter.

No. 18-20228

But, 42 U.S.C. § 4072 confers "original exclusive jurisdiction" on "the United States district court for the district in which the insured property . . . shall have been situated". This action was not removed to district court until 24 April 2017, well over one year from either letter, and, therefore, too late under the statute.

That Ekhlassi may have filed this action within one year of an operative denial-letter does not save it, because he filed in state court, when 42 U.S.C. § 4072 required the action to have been filed in federal court within a year. In other words, Ekhlassi did not timely file in the correct court. (As noted, because of the above basis on which we hold Ekhlassi's claim time-barred, we need not reach which of the two letters triggered the limitations period.)

### III.

For the foregoing reasons, the judgment is AFFIRMED.

13

No. 18-20228

HAYNES, Circuit Judge, concurring:

Because we are bound by precedent to apply § 4072 to a WYO carrier, I concur in the judgment of the court in this case. I write separately because, unlike the majority opinion, I conclude that our precedent wrongly construes § 4072 in a counter-textual fashion.

We should instead begin and end with the plain text of the statute, which refers only to suits against the FEMA Administrator. *See* 42 U.S.C. § 4072. As quoted in the majority opinion, the statute clearly states, in relevant part, "the claimant . . . may institute an action against the *Administrator* on such claim."[1] *Id.* (emphasis added). In turn, the term "Administrator" is defined as the "Administrator of the Federal Emergency Management Agency," while "Write Your Own" describes "the cooperative undertaking between the insurance industry and the Federal Insurance Administration which allows participating property and casualty insurance companies to write and service standard flood insurance policies." *Id.* § 4004 (a) (3), (5).

The text is unambiguous; it simply does not mention WYO carriers. If Congress had intended § 4072 to apply to WYO carriers it could have added that to the provision. *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) ("The preeminent canon of statutory interpretation requires us to 'presume that the legislature says in a statute what it means and means in a statute what it says there.'") (brackets omitted) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)).

The Second Circuit, although agreeing that "§ 4072 does not expressly indicate that anyone other than the [Administrator] may be sued,"

---

[1] I note that the one-year statute of limitations would be applicable here regardless of whether "Administrator" under § 4072 encompasses the WYO carrier because Paragraph VII.R. of the applicable insurance policy issued to Ekhlassi states that "you must start the suit within one year after the date of the written denial of all or part of the claim."

nevertheless concluded that the provision was ambiguous because the word "against" "could mean either 'having as defendant' or 'opposed to'." *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 186 (2d Cir. 2006). This seems to be searching for an ambiguity where one does not exist; taken at its ordinary meaning, the phrase "the claimant . . . may institute an action against the Administrator," seems clearly to contemplate an insured suing the FEMA Administrator.

But even assuming there is some ambiguity in the provision, I agree with the Seventh Circuit that although WYO carriers stand in the shoes of the Administrator in many respects, that does not compel the conclusion that § 4072 applies to WYO carriers. *See Downey v. State Farm Fire & Cas. Co.*, 266 F.3d 675, 680 (7th Cir. 2001). The Seventh Circuit disagreed with the Third Circuit's conclusion that § 4072 applies to WYO carriers because under FEMA regulations, WYO carriers are (1) fiscal agents of the United States, (2) reimbursed by FEMA for defense costs, and (3) required to pay excess proceeds to the Federal Insurance Association, and FEMA ultimately pays the insurance claims. *Id.* at 679–80; *see Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 166 (3d Cir. 1998). The Seventh Circuit concluded that FEMA's financial obligations meant there was a federal interest, and thus federal jurisdiction under 28 U.S.C. § 1331, but the federal interest did not mean that a lawsuit against a WYO carrier was in fact a lawsuit against FEMA. *Downey*, 266 F.3d at 680–82. This reasoning makes the most sense in light of the text of the provision itself. As the Seventh Circuit pointed out, courts do not "typically look to see who will be *affected* by a decision" for "jurisdictional purposes." *Id.* at 680.

Further, although WYO carriers are "place-holder[s]" for FEMA in many respects, *id.*, they are independent in other respects. As Ekhlassi points out in his supplemental briefing, FEMA regulations provide that WYO carriers (1) "arrange for the adjustment, settlement, payment and defense of all claims

arising from policies of flood insurance [they] issue[]," (2) use their "own customary standards, staff and independent contractor resources," and (3) "are solely responsible for their obligations to their insured . . . such that the Federal Government is not a proper party defendant in any lawsuit arising out of such policies." 44 C.F.R. § 62.23 (d), (e), (g).

Also, WYO carriers are fiscal agents, but not general agents, of the United States. *Id*. § 62.23 (g); *cf. Dwyer v. Fidelity Nat. Prop. & Cas. Ins. Co.*, 565 F.3d 284, 289 (5th Cir. 2009). It is one thing to have a cooperative relationship with a private insurance carrier, quite another to transform that carrier into a governmental entity. We should not assume Congress made that transformation *sub silentio.*

Thus, while I respect and agree that we are bound by precedent, I disagree that our precedent is correct. For that reason, I concur in the judgment but not in the reasoning beyond citing precedent.