# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 30, 2022

Lyle W. Cayce
Clerk

No. 22-30022
Summary Calendar

Lylia McInnis,

*Plaintiff—Appellant*,

*versus*

Liberty Mutual Fire Insurance Company,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Middle District of Louisiana
No. 3:19-CV-12

Before Stewart, Duncan, and Wilson, *Circuit Judges*.

Per Curiam:*

This dispute concerns a flood insurance policy offered pursuant to the National Flood Insurance Act of 1968. Lylia McInnis' home flooded in August 2016 during the record flooding that pummeled large swaths of

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

southern Louisiana and Mississippi.[1] She sued her insurance carrier after a dispute over her policy's coverage, but the district court found the suit was barred by the statute of limitations. We affirm.

I.

Congress enacted the National Flood Insurance Act of 1968 ("NFIA"), 42 U.S.C. §§ 4001 *et. seq.*, to ensure the availability of flood insurance because in many areas it is uneconomical for private insurers to offer coverage. *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998). NFIA established the National Flood Insurance Program ("NFIP"), which allows private insurers to issue Standard Flood Insurance Policies ("SFIPs") on behalf of the federal government. *Cohen v. Allstate Ins. Co.*, 924 F.3d 776, 778 (5th Cir. 2019). These private carriers, known as Write-Your-Own ("WYO") carriers, act as fiscal agents of the federal government by issuing and administering policies underwritten by the government. *Ibid.*

The Federal Emergency Management Agency ("FEMA") administers NFIP and determines the content of SFIPs. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009); 44 C.F.R. Pt. 61, App. A(1) (laying out the SFIP terms). WYO carriers must issue SFIPs in FEMA's precise terms as well as adjust and pay claims according to FEMA's regulations. *Campo*, 562 F.3d at 754. Because SFIP claims are paid from the federal treasury, strict compliance with the policy terms and applicable regulations is required. *Ekhlassi v. Nat'l Lloyds Ins. Co.*, 926 F.3d 130, 133 (5th Cir. 2019). Policyholders may file suit against their carrier only "within one year after

---

[1] *See generally* National Weather Service, *August 2016 Record Flooding*, https://www.weather.gov/lix/August2016flood (describing the cause and extent of the flooding).

the date of the mailing of notice of disallowance or partial disallowance" of their claim. 42 U.S.C. § 4072.

## II.

Lylia McInnis had a SFIP through Liberty Mutual, a WYO carrier. Her property in the Baton Rouge, Louisiana, area flooded on or about August 13, 2016, and Liberty Mutual promptly assigned an independent adjuster to assess her loss. After the adjuster's inspection, McInnis submitted a signed and sworn proof of loss claiming $122,576.00 in damages to the building and $26,217.56 in contents loss, which Liberty Mutual paid in full.

On November 20, 2016, Liberty Mutual sent McInnis a letter informing her that "content items that were not supported by photographs were not able to be included in your claim." The letter stated that Liberty Mutual was "deny[ing] coverage" for those items and that McInnis had the right to appeal her claim to FEMA. However, it noted that appeal was available only for those portions of her claim "denied, in whole or in part" "by the letter."

McInnis appealed the denial to FEMA. On June 26, 2017, FEMA responded by concurring with Liberty Mutual's denial, finding McInnis had discarded a number of damaged items before the adjuster inspected the property. Notably, FEMA stated that "[McInnis] disputes the insurer's partial denial of contents payment" and that appeal was proper because the insurer had "issue[d] a written denial, in whole or in part, of the policyholder's claim."

McInnis then submitted a revised proof of loss on December 26, 2017, claiming $247,749.15. Liberty Mutual sent a letter denying this proof of loss on January 8, 2018. It stated: "A letter was previously sent to the insured denying payment for content items that were not supported by photographs. Therefore, our denial stands."

Exactly one year later, on January 8, 2019, McInnis sued Liberty Mutual for breaching the SFIP. Liberty Mutual moved for summary judgment, which the district court granted, finding McInnis' suit was time-barred because it had not been filed "within one year after the date of mailing of notice of disallowance or partial disallowance" of her claim, as required by 42 U.S.C. § 4072. This appeal followed.

### III.

We review a grant of summary judgment *de novo*. *Davidson v. Fairchild Controls Corp.*, 882 F.3d 180, 184 (5th Cir. 2018). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED R. CIV. P. 56(a).

SFIP policyholders have a limited window in which to bring claims against their WYO carriers. The pertinent provision, 42 U.S.C. § 4072, provides in relevant part:

> [U]pon the disallowance by the Administrator of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant, within one year after the date of mailing of notice of disallowance or partial disallowance by the Administrator, may institute an action against the Administrator on such claim . . . ."

On appeal, McInnis argues that her claim was not disallowed until Liberty Mutual rejected her proof of loss on January 8, 2018. She contends that a disallowance or partial disallowance of a proof of loss is the exclusive mechanism for triggering the statute of limitations. Liberty Mutual counters that while denial of a proof of loss may be *one* way of triggering the statute of limitations, it is not the only way, and therefore its denial letter of November 2016 started the clock. The question before us, then, is when McInnis was mailed a "notice of disallowance or partial disallowance" of her "claim."

The district court found that the November 2016 letter started the clock, and we agree. We begin with the statutory text. *In re Nowlin*, 576 F.3d 258, 261 (5th Cir. 2009) ("When interpreting a statute, we begin by examining its language."). Section 4072 does not mention a proof of loss, much less require the disallowance of one. Instead, it refers to the "disallowance . . . of any such *claim*." 42 U.S.C. § 4072 (emphasis added). Therefore, a claim and a proof of loss are distinct. As FEMA explains in its NFIP Claims Manual, "[t]he proof of loss is not the claim. The claim is the policyholder's assertion that they [sic] are entitled to payment for a Insured [sic] loss under the terms of the SFIP. A policyholder has only one claim from a flood event regardless of the number of proofs of loss and amount of documentation the policyholder may submit in support of that claim." FEMA, National Flood Insurance Program Claims Manual at 68 (Oct. 2021). *See also* 44 C.F.R. § 62.23(i)(1) (requiring WYO carriers to be "guided by NFIP Claims manuals" in adjusting claims); *Nguyen v. Hartford Underwriters Ins. Co.*, 514 F. Supp. 3d 831, 838 (M.D. La. 2021) ("Courts read the SFIP *in pari materia* with the Claims Manual to resolve coverage disputes."). This basic distinction is reflected in McInnis' own actions: her property flooded once, giving rise to one claim, but she submitted two different proofs of loss in support of that claim.

We have held that letters containing language similar to Liberty Mutual's November 2016 letter constituted the denial of a claim. For instance, we concluded that a letter from a WYO carrier purporting to "deny coverage for various items that [the insured] claimed pending documentation of replacement" sufficed to start the statute of limitations. *Cohen*, 924 F.3d at 779 (cleaned up). Likewise, the November 2016 letter here plainly put McInnis on notice that a part of her claim had been disallowed. The letter stated that "content items that were not supported by photographs were not able to be included in your claim" and referred to that as a "decision to deny

coverage." It also informed McInnis of her right to administratively appeal any portion of her claim "denied by th[is] letter."

McInnis insists the November 2016 letter contained mere "boilerplate language" insufficient to show the disallowance of a claim, but her own actions belie that assertion. McInnis acted on the "boilerplate" language by filing an appeal of the denial with FEMA. By law, an appeal to FEMA is only "available after the issuance of the insurer's written denial, in whole or in part, of the insured's claim." 44 C.F.R. § 62.20(b); *see also Cohen*, 924 F.3d at 781 ("[A] participant in the federal flood insurance program . . . is presumed to have constructive knowledge of all rules and regulations associated with it."). The November 2016 letter even warned McInnis that her appeal could only challenge portions of her claim that had been denied. And FEMA explained that McInnis' appeal was properly before it because she "disputes the insurer's partial denial of contents payments for failure to document the loss." Because McInnis appealed, she accepted that the November 2016 letter partially denied her claim, as required by FEMA's regulations. She cannot now argue that the November 2016 letter did not provide adequate notice.

Accordingly, the one-year period for filing suit under § 4072 began to run from the November 2016 letter, not the January 2018 letter. The district court correctly found that McInnis' suit was untimely.

AFFIRMED.